**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT JACKSON**

**SEPTEMBER SESSION, 1998**

**FILED**

**December 21, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| EDUARDO E. WELLS, | ) | C.C.A. NO. 02C01-9709-CR-00345 |
| | ) | |
| Appellant, | ) | |
| | ) | |
| | ) | SHELBY COUNTY |
| VS. | ) | |
| | ) | HON. ARTHUR E. BENNETT |
| STATE OF TENNESSEE, | ) | JUDGE |
| | ) | |
| Appellee. | ) | (Post-Conviction) |

**ON APPEAL FROM THE JUDGMENT OF THE
CRIMINAL COURT OF SHELBY COUNTY**

<u>FOR THE APPELLANT</u>:

JAMES V. BALL
217 Exchange Avenue
Memphis, TN 38105

<u>FOR THE APPELLEE</u>:

JOHN KNOX WALKUP
Attorney General and Reporter

DOUGLAS D. HIMES
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

WILLIAM GIBBONS
District Attorney General

PAUL GOODMAN
Assistant District Attorney General
Criminal Justice Complex, Suite 301
201 Poplar Avenue
Memphis, TN 38103

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

This is an appeal as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. The Petitioner, Eduardo E. Wells, appeals from an order of the trial court denying him post-conviction relief. The Petitioner presents one issue for our review: whether his guilty plea was knowingly and voluntarily made with effective assistance of counsel.[1] We affirm the judgment of the trial court.

The Petitioner was indicted by a Shelby County Grand Jury; and on October 10, 1994, he pleaded guilty to attempted first degree murder, especially aggravated robbery, aggravated robbery, and aggravated rape. The Petitioner was sentenced as a Range I standard offender. He received a twelve-year sentence for aggravated robbery and fifteen-year sentences for aggravated rape, especially aggravated robbery, and attempted first degree murder. The aggravated robbery and aggravated rape sentences were ordered to run concurrent with each other, but consecutive to the especially aggravated robbery and attempted first degree murder sentences. The especially aggravated robbery and attempted first degree murder sentences were ordered to run concurrent with each other. Therefore, the Petitioner's effective sentence was thirty years as a Range I standard offender.

At the guilty plea proceeding, in response to questions by the trial judge, the Petitioner stated that he understood the charges against him, the plea itself,

---

[1] In his brief, the Petitioner actually presents three issues for our review: (1) whether the Petitioner entered his plea involuntarily because of coercion in the presence of his attorney from the prosecutor for his case; (2) whether the Petitioner was denied effective assistance of counsel; and (3) whether Petitioner was denied effective assistance of counsel because his attorney had a conflict of interest resulting from a fee dispute between the Petitioner and his attorney's son. However, because we believe that these three issues are interrelated, we have consolidated them into one issue for purposes of this opinion.

and both the sentencing ranges for his crimes and the sentence to be imposed upon him by the trial court. He stated that he understood he was giving up his right to a trial by jury. He indicated that his legal representation had been adequate and reported that he had no complaints concerning the representation he had received. He stated that his attorney adequately interviewed witnesses or discussed with him testimony of witnesses the Petitioner wished to call on his behalf. He also reported that he had not been forced or coerced to make his plea.

On February 24, 1995, the Petitioner filed a pro se petition for post-conviction relief.[2] An amended petition was filed on April 18, 1996, after counsel was appointed to represent the Petitioner. The amended petition alleged that the Petitioner's plea was involuntary due to ineffective assistance of counsel. Specifically, the Petitioner claimed that his attorney had a conflict of interest at the time of his representation and that his attorney allowed the prosecutor to intimidate the Petitioner in the attorney's presence, which resulted in a coerced guilty plea. Evidentiary hearings were conducted on March 20, 1997 and May 23, 1997. The trial court denied Petitioner's petition for post-conviction relief by written order filed July 25, 1997.

At the evidentiary hearing conducted on March 20, 1997, the Petitioner testified that Marvin Ballin was appointed to represent him in July 1994. He said that prior to the appointment of Marvin Ballin as his attorney, he sought the representation of Leslie Ballin, Marvin Ballin's son, with whom Marvin Ballin

---

[2] In his pro se petition, Petitioner alleged that evidence in his case was obtained by illegal search and seizure and that the prosecution had failed to disclose exculpatory evidence to the defense.

practiced law. The Petitioner stated that Leslie Ballin accepted two hundred dollars for Petitioner's representation, subsequently withdrew from the case, and then refused to refund the money. Although the Petitioner claimed to have filed a complaint against Leslie Ballin with the disciplinary board, the Petitioner produced no proof of the complaint at the hearing. He maintained that he did not know that Leslie and Marvin Ballin practiced law together until after Marvin Ballin's appointment as his attorney. He also admitted that he never discussed with Marvin Ballin the alleged fee dispute or his previous dealings with Leslie Ballin, but he claimed not to have done so because he did not realize initially that Leslie Ballin was Marvin Ballin's son and partner in practice. In addition, contrary to his statements at the guilty plea proceeding, the Petitioner testified that although he had given his attorney the names of witnesses, his attorney failed to interview those witnesses, excepting only the Petitioner's mother.

The Petitioner further testified that on October 7, 1994, during his incarceration pending disposition of this case, he was brought to court to meet with his attorney and discuss a guilty plea. He testified that his attorney, of his own accord, brought the prosecutor to the holding room for prisoners in the courthouse. He stated that his attorney allowed the prosecutor to "badger" him. He testified that the prosecutor told him that the judge handling his case enjoyed prosecuting people like the Petitioner. The Petitioner testified that the conversation left him "somewhat rattled-shaken" and that when the prosecutor "talked about Judge Blackwood, I already knew based on what [the prosecutor] had stated that it wasn't going to be anything fair going on that day." Petitioner also reported that on October 10, 1994, the day of his plea, his attorney told him he needed to take the offer from the prosecution because he "didn't give a s__t,"

-4-

which the Petitioner interpreted to mean that his attorney "didn't care about me or the case."

The Petitioner maintained that as a result of these conversations, he pleaded guilty. He explained,

> for the most part, it was more or less of me tired of seeing my family dragged down here. I got tired of being dragged down. It was one big circus act after another. And I was just basically tired and drained. . . . I was just looking for some relief. Not necessarily for me but for my family also.

When asked at the post-conviction hearing why he told the judge at his plea hearing that his plea had not been forced or coerced, the Petitioner stated that his answer to the question was "a very, very uneducated statement." He also told the post-conviction court that in response to other questions posed by the judge at his guilty plea proceeding, he entered "unwilling statements." He admitted that when the trial judge asked whether he had chosen to plead guilty freely and voluntarily, he answered yes, but he stated at the post-conviction proceeding that his answer was "sort of withdrawn."

The Petitioner testified that he decided to plead guilty and that he knew he was pleading guilty to thirty years. However, he stated that he pleaded guilty after he "had seen how everything went." He indicated that although he came to court on the day of his plea fully prepared to go to trial, he pleaded guilty because "I was really just afraid, really, of the worse [sic] happening, which was [a possible sentence of] eighty-seven years." He stated that he "made a very uncalculated decision." He explained that the judge told him he "would have to accept Attorney Ballin's services or represent [himself]," which he did not feel prepared

to do; and he indicated that he was afraid his attorney might not adequately represent him at trial.

Marvin Ballin, the Petitioner's attorney, who had practiced criminal law for approximately thirty years, also testified at the post-conviction proceeding. He testified that initially he and the Petitioner "had our difficulties," which they "ironed out." Ballin testified, "realizing that Mr. Wells was going to be a most difficult client, I prepared for that case as best any lawyer could." He reported that prior to the Petitioner's plea, he spent "literally hours at home on the telephone at night" with the Petitioner's mother discussing the case. Although the Petitioner insisted that his mother never wanted him to plead guilty, Ballin testified that to the best of his recollection, the Petitioner's mother advised him to plead guilty.

With regard to the Petitioner's conflict of interest claim, Ballin testified that he first became aware of the Petitioner's complaint when he read about the alleged fee dispute in the petition for post-conviction relief. He stated that the Petitioner never mentioned to him that Leslie Ballin had once represented him or that Leslie Ballin owed him money. He reported that when he discussed the Petitioner's allegations with his son, his son told him, "yeah, he was up here, but I didn't take the case, and that's about all I know." With regard to the two hundred dollars, Ballin identified a receipt provided by the Petitioner signifying that his office received the sum of two hundred dollars from the Petitioner on May 27, 1992. However, he stated, ?[the Petitioner has] made an accusation that I did something about a lousy $200 that affected his life, and that is a consummate lie."

Ballin also testified that he conducted extensive discovery in the Petitioner's case. In addition, he testified that he filed a number of motions to suppress evidence, which were denied by the trial court. He testified that to the best of his recollection, there were no alibi witnesses in the Petitioner's case and the Petitioner's defense was mistaken identity.

Ballin reported that on the day that the Petitioner's trial was to be held, the Petitioner "wanted to go in the back and talk and discuss the possibilities of a plea." He testified that although he told the Petitioner the State was adamant about its offer,[3] the Petitioner was insistent in his belief that Ballin could procure a better offer for him. He testified he told the Petitioner, "look, if you want to, I'll go ask [the prosecutor], and you can see that I'm doing my job, that I have tried to get you the best thing going, and you can either plead or go to trial. They're not going to come off that offer." He reported that the prosecutor did talk to the Petitioner, and although he was unsure, he believed that the prosecutor did so at the Petitioner's insistence. He testified that the prosecutor "may have raised his voice, but it was at me rather than Mr. Wells." He stated that the prosecutor did not threaten the Petitioner but "told me that if [the Petitioner] got convicted, he sure as heck was going to max him out or that the judge was going to max him out, and the chances were there to get consecutive [sentences] to where he'd be looking at fifty [years]. . . . This case was not a very nice case." He also testified that he was present the entire time the prosecutor remained in the room with his client, which was approximately two to three minutes.

---

[3] Which the Petitioner ultimately accepted.

Ballin testified that it was his opinion that the Petitioner pleaded guilty because Ballin told him "there was every possibility that [his] cases could run consecutive" due to the heinous nature of the crimes with which the Petitioner was charged. He stated he told the Petitioner that based upon what he knew of the trial judge's reputation, the trial judge would likely "max him every way he could." He also testified that he believed the Petitioner decided to plead guilty because he told the Petitioner "that once the evidence went in, we were in trouble."

In determining whether counsel provided effective assistance at trial, the Court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To succeed on a claim that counsel was ineffective at trial, a petitioner bears the burden of showing that counsel made errors so serious that he was not functioning as counsel as guaranteed under the Sixth Amendment and that the deficient representation prejudiced the petitioner, resulting in a failure to produce a reliable result. Strickland v. Washington, 466 U.S. 668, 687 (1984); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). To satisfy the second prong, the petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact-finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 S.W.2d at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When reviewing trial counsel's actions, this Court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Counsel's alleged errors should be judged at the time they were made in light of all facts and circumstances. Strickland, 466 U.S. at 690; see Cooper, 849 S.W.2d at 746.

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of the plea process. Hill v. Lockart, 474 U.S. 52 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). The prejudice requirement is modified so the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Turning now to the case before us and the Petitioner's claim of a conflict of interest, the trial court stated:

> This Court finds that no conflict of interest existed between Petitioner and his attorney, Marvin Ballin, because Petitioner did not demonstrate that counsel actively represented conflicting interest [sic], nor did Petitioner demonstrate that an actual conflict of interest adversely affected his lawyers [sic] performance. Petitioner provided no evidence that counsel was conflicted due to a prior dispute between Petitioner and Leslie Ballin. Petitioner did not even provide any evidence that his counsel was even aware of the prior dispute between Petitioner and Leslie Ballin. Furthermore, Ballin, himself, did not even consider the prior dispute to be a conflict of interest until well after he entered his guilty plea.
> Because this Court finds that no conflict of interest existed, the Petitioner must demonstrate (1) that counsel's performance was deficient and, (2) that there is a reasonable probability that but for counsel's deficient performance, Petitioner would not have pleaded guilty. In the case at hand, Petitioner has failed to meet the burden.

We agree that the Petitioner has failed to provide sufficient proof of a conflict of interest to support his allegations. In fact, in his brief, the Petitioner concedes:

"While the proof at the evidentiary hearings in this case did not show an actual conflict it does shed light on the nature of the relationship between Marvin Ballin and Petitioner . . . ." This issue is without merit.

The Petitioner next argues that he received ineffective assistance of counsel because his attorney allowed the prosecutor to threaten him, which resulted in a coerced and involuntary guilty plea. In reviewing this issue, the trial court concluded that "Petitioner entered his guilty pleas freely and voluntarily." Based upon a thorough review of the facts, we are unable to conclude that the Petitioner received ineffective assistance of counsel or that the Petitioner's pleas were made involuntarily. The meeting between the Petitioner and the prosecutor took place in the presence of the Petitioner's attorney. While the Petitioner's attorney confirmed the Petitioner's allegations that the prosecutor strongly advised the Petitioner he would seek the maximum penalty should the Petitioner proceed to trial and that he believed the trial judge would grant the maximum penalty in Petitioner's case, we conclude that the Petitioner has not carried his burden of showing that this incident forced him to enter a guilty plea. Petitioner's attorney arranged this confrontation because Petitioner was unconvinced that the plea agreement offered was the most favorable one the State would consider. The incident took place on a Friday, and the Petitioner had a full weekend to consider his options before deciding to plead guilty the following Monday. He was also granted ample opportunities by the trial judge to voice his concerns at the guilty plea proceeding and did not do so. We therefore agree with the conclusion of the trial court.[4]

---

[4] In addition, the Petitioner states in his brief "that he was dissatisfied with Attorney, Marvin Ballin, and has no knowledge if Marvin Ballin interviewed the witnesses that the Petitioner gave him." This issue is mentioned only summarily in the Petitioner's brief and is not

-10-

In conclusion, viewing the actions of the Petitioner's attorney in light of all facts and circumstances at the time of the guilty plea, we cannot find any deficiency in his representation prior to or during the guilty plea proceedings. However, even assuming that the Petitioner's representation was ineffective, the Petitioner has failed to demonstrate any prejudice. The Petitioner has simply failed to show that had his attorney's actions been different, there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. See Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746.

The judgment of the trial court is accordingly affirmed.

_____
DAVID H. WELLES, JUDGE


CONCUR:


_____
PAUL G. SUMMERS, JUDGE


_____
JOE G. RILEY, JUDGE

---

set forth as a complete issue for our consideration. Therefore, we will not address it at length. However, based upon a review of the record before us, we find that this argument is without merit in light of the facts of this case. We find that the Petitioner has failed to provide any proof to support his allegation that his attorney did not interview witnesses for his case.